## ESTEP v. LARSH.

DEPOSITIONS.—A deposition may be good in part and bad in part.

DEPOSITION—WITNESS.—Where the deposition of a witness is taken in a cause, and it is agreed by the parties that the deposition shall be read upon the trial, at all events, without reference to the presence or absence of the witness at the time of the trial, it is not error to admit the deposition in evidence, although the deponent had already been called and examined and cross-examined orally in the cause.

PRESUMPTION.—Where there is nothing in the record inconsistent with such presumption, this Court will presume in favor of the action of the lower Court.

RULE 30.—The words, "which is all the evidence given to the jury in this case," at the conclusion of a bill of exceptions, are not a compliance with Rule 30.

PRACTICE.—Where several instructions are given to the jury, a party, asking a new trial on the ground of alleged error in the instructions, must point out with reasonable certainty and particularity the error complained of.

APPEAL from the *Wayne* Circuit Court.

PERKINS, J.—This was an action by *Larsh* against *Estep*, commenced under the old system of procedure. The declaration consists of three counts. The second and third counts make no point in the case, and will not, therefore, be farther noticed. The first is upon an agreement in writing which reads thus:

" This agreement, made this 13th of *December*, 1851, between *Leroy M. Larsh* and *John W. Estep*, both of *Wayne* county, *Indiana*, witnesseth: that *Larsh* has sold to *Estep* his undivided interest in the saw mill and land purchased by said *Larsh* of *William S. T. Morton*, and of which *Larsh* had heretofore sold *Estep* one undivided half, and *Estep* has agreed to pay said *Morton* the balance of the purchase money due him

on said property, and has executed his notes for the same, and has received a title bond for the same from *Morton*. And it is agreed between the parties that the saw mill is to be completed by the parties in the same manner as if this agreement had not been made, under the arrangement with the millwright. It is further agreed that the undivided half of said *Larsh* of the saw mill and premises, and privileges thereunto belonging, shall be appraised under oath as finished at its cash value on hand, by two disinterested appraisers, one to be chosen by each party, and if the two can not agree, they, the two, are to select a third disinterested party, appraiser, and the appraisement so made by such appraisers, or any two of them, shall be final between the parties; and then one undivided half of all the joint debts and demands against said *Larsh* and *Estep*, on account of said mill and improvements, after deducting credits or offsets, shall be deducted from such appraisement, and which debts and demands said *Estep* hereby agrees to pay, after deducting credits and offsets, and then said *Estep* agrees to pay said *Larsh* such appraisement as follows, to-wit: One half the amount when the saw mill shall be finished and possession exclusively given to *Estep*, deducting from the first payment the debts so to be paid for said parties, and the other half in one year from the 1st of *January* next, deducting from the sum last due 281 dollars and 77 cents, assumed to be paid to *Morton* by *Estep* on the premises. *Estep* is also to have in the above contract the joint personal property now belonging to the parties, including a new log wagon now being made for said parties at *Richmond*, which property (that is *Larsh's* half of the same,) is included in the sale by *Larsh* to *Estep*, and is to be appraised with the mill and premises, and in the same manner. The rock on the premises said *Larsh* is to retain as his property, and the brick said *Estep* is to pay *John Wilson* for, and pay said *Larsh* one dollar per thousand for hauling the same, and

Estep v. Larsh.

then they shall belong to said *Estep* as his property. It is also understood that the mill-privilege, mill and lands are to be appraised by said appraisers as they now are, and subject to any back water upon them.

"LEROY M. LARSH, [SEAL.]
"JOHN W. ESTEP," [SEAL.]

It is averred that the plaintiff, after the execution of the agreement, proceeded to complete the saw mill, which was done on the 25th of *December*, 1851, when possession of the same was exclusively given to and accepted by *Estep*; that *Enock Railsbaek* and *Andrew Hunt* were chosen by the parties appraisers of the undivided half of the mill property, who, having failed to agree, chose *David Commons* a third appraiser, and that, on the 26th of *December*, 1851, they, the appraisers, having been first duly affirmed, appraised said mill, privilege, premises, and personal property described, &c., at 1,725 dollars, said mill being appraised as finished and subject to back water thereon, &c. It is also averred, substantially, that the plaintiff hath performed all the stipulations in said agreement on his part to be performed, but that defendant has refused to pay, &c.

There were issues upon the complaint or declaration, and upon pleas of payment, set-off, &c. The issues were submitted to a jury, who found for the plaintiff 1,123 dollars. And the Court, having refused a motion for a new trial, rendered judgment, &c.

The written appraisement above referred to is as follows:

"The undersigned, *Enoch Railsback*, chosen by *Leroy M. Larsh*, and *Andrew Hunt*, chosen by *John W. Estep*, as appraisers to appraise the undivided half of a certain saw mill, privilege and premises and property, pursuant to an agreement between said *Larsh* and *Estep* on the 13th of *December*, 1851, who, after being duly sworn to make such appraise-

ment, and having viewed said premises and property, and being unable to agree we selected *David Commons* as a third appraiser, who, also, being affirmed to make such appraisement, and after due deliberation, we, the said *Railsback, Hunt* and *Commons*, do appraise the undivided half of said saw mill, privilege and premises, and the personal property described in said agreement, at 1,725 dollars, the said saw mill being appraised as finished, agreeably to said agreement, and the mill privilege subject to the back water now on the same.

"Witness our hands this, 26th day of *December*, 1851.

"ENOCH RAILSBACK,
"ANDREW HUNT,
"DAVID COMMONS."

The errors in the case at bar are thus assigned: 1. The Court erred in admitting the depositions of *Hill*, *Wolf*, *Burgis* and *Commons* to be read in evidence. 2. In the instructions given to the jury. 3. In refusing instructions moved by the appellant. 4. In admitting the appellee to testify; and 5. In overruling the motion for a new trial.

1. As to the admission of the depositions of *Hill*, *Wolf* and others. The objection to the admission of these depositions is that they were irrelevant. They were admitted as rebutting evidence; and we might dispose of the objection made to them at once, by stating that all the evidence given in the cause is not shown to be in the record, and, hence, we might presume that this rebutting evidence was relevant to evidence given by the defendant. But we think the evidence might naturally become relevant upon a trial of the issues in the cause. Questions naturally arose upon the trial as to whether the mill had been finished according to contract, as to whether it filled representations as to capacity, &c., and why *Estep* refused to pay for the mill after taking possession. Now, any evidence which tended to show that *Estep*

Estep *v.* Larsh.

put his refusal to pay upon ground other than the fulfillment by *Larsh,* of his precedent obligations tended to establish an admission that *Larsh* was not in default, and that *Estep* was insincere in now so insisting. We think such was the tendency of the depositions objected to; and, it may be remarked, a part of a deposition may be legal evidence and a part not.

We will now quote one of the admitted depositions, objected to as above, as a sample of all:

"*Daniel Wolf,* being sworn, deposeth and says: I had a conversation with *Mr. Estep,* after the occupation of the mill by *Estep,* and after the commencement of suit against him by *Larsh. Estep* told witness that *Larsh* had sued him, and that he knew a man that would pay him all the costs of suit for the use of the money as long as they could keep *Larsh* out of the money."

An additional objection is made to the admission of the deposition of *Commons.* It is thus presented in the record: "And thereupon the plaintiff offered to read in evidence the deposition of *David Commons,* on file in this case, to which the defendant objected on the ground that said *David Commons* had been examined by the defendant and cross-examined by the plaintiff as a witness on this trial and was in Court, which the Court admits to be the fact; but the Court admitted said deposition to be read to the jury, on the ground that the following agreement had been made between the attorneys of the parties, on the 29th day of *March,* 1858, viz:

"*Leroy M. Larsh*  
 v.  
"*John W. Estep.*  

In the *Putnam* Court of Common Pleas. Complaint on award, agreement, &c.

"The undersigned, attorneys for the parties in the above suit, for the sake of saving time and expense to both parties, agree to use, in the above case, the depositions heretofore

taken between the same parties in a cause on [said award, agreement, &c., in the *Putnam* Circuit Court. And it is also agreed that in case *Enoch Railsback* is not used as a witness in said case, that it is to be admitted on the trial of the case that said appraisers were sworn according to law. *March* 29, 1858.        NEWMAN & SIDDALL, Att'ys for defendant.
        " J. B. JULIAN, plaintiff's attorney.

" And before entering on the trial of this case at this term it was agreed by the attorneys for the parties to extend the terms of that agreement to the trial of this case."

In admitting the deposition the Court acted strictly upon the agreement of the parties. Does anything appear showing that action erroneous? If so, what is it? It appears that the witness was in Court; but the parties had agreed at the opening of the trial, as we may presume, that the deposition should be read without any proviso as to the presence or absence of the witness. See *Griffin* v. *Templeton,* 17 Ind. 234. It further appears that the defendant called the witness and examined him, and that the plaintiff cross-examined him, but to what? Here was the plaintiff's witness; the plaintiff had taken his deposition. The defendant had agreed, without qualification, that that deposition should be read on the trial; but, notwithstanding this agreement of the defendant that the plaintiff might read the deposition, he, the defendant, sees fit to and does call the witness as his witness, examines him, and the plaintiff cross-examines him, but to what, is not stated in the bill. Now, although the defendant had called *Commons* as his witness and the plaintiff had cross-examined him as to the matters inquired into by the defendant, still this did not preclude the plaintiff from calling *Commons* again as his witness to new matter; and if he had a right to call the witness, there is nothing in the record showing that he had waived his right, under the agreement, to use his deposition

Estep *v.* Larsh.

instead. The Court below, who saw and heard all connected with the matter, could judge better of the intention of the parties than we can; and where there is nothing inconsistent with such presumption in the record, we must presume in favor of the action of the Court below. And this further question might be asked, what harm is shown to have been done? If the testimony of *Commons* was the same on the trial and in the deposition, what harm was done? There is nothing showing it different. But, if it was different, and the proper foundation was laid, the deposition might have been admissible to contradict, &c. We see no aspect of the case presented by the record authorizing a reversal on the point now being considered.

2. As to the admission of *Larsh* as a witness. The objection was not to the competency of *Larsh*, but to the uncertainty of his statement. He testified touching the amount of partnership debts *Estep* had paid under the agreement sued on, and for which he was to have credit. He said he knew the amount was 139 or 140 dollars; that he had taken down the items when the parties were presenting the case to arbitrators, &c., but could not then state the items, &c. His want of recollection in these particulars went to the credibility of his statement, not to its competency.

3. The motion for a new trial, we can not consider upon the weight of evidence. A bill of exceptions containing evidence closes thus: "Which is all the evidence given to the jury in this case."

4. As to the instructions given and refused. The motion for a new trial, so far as based on the giving and refusing instructions, is in these words: "Because the Court erred in the instructions given to the jury. Because the Court erred in refusing the instructions prayed by the defendant and refused by the Court."

The instructions refused were asked with reference to the

law arising upon a case made by evidence, but as that, we have seen, is not in the record we must presume the instructions were refused because not justified by the evidence. See cases. in Davis' Dig. 510. Thirteen long instructions, some of which were certainly right, were given, and excepted to thus: "To the giving of which instructions, and each paragraph thereof, the defendant immediately excepted."

Then, as we have seen, the objection to them in the motion for a new trial was thus: "The Court erred in the instructions given to the jury." The cases of *Robinson* v. *Hadley*, 14 Ind. 417, and *Elliott* v. *Woodward*, 18 *id.* 183, show clearly that we can not notice the assignment of error upon the instructions.

*Per Curiam.*—The judgment below is affirmed, with 5 per cent. damages and costs.

*David McDonald* and *John S. Newman*, for the appellant.

*James Perry, J. B. Julian* and *I. F. Julian*, for the appellee.